NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0255n.06

Nos. 10-4367/10-4448

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Mar 06, 2012*

LEONARD GREEN, Clerk

G.G. MARCK AND ASSOCIATES, INC.,                    )
                                                    )
    Plaintiff-Appellee/Cross-Appellant,         )
                                                    )
v.                                                  )    ON APPEAL FROM THE UNITED
                                                    )    STATES DISTRICT COURT FOR
NORTH AMERICAN INVESTMENTS, CORP.;                  )    THE  NORTHERN DISTRICT OF
JAMES PENG; PHOTO U.S.A. CORPORATION;               )    OHIO
PHOTO U.S.A. ELECTRONIC GRAPHIC, INC.,              )
                                                    )
    Defendants-Appellants/Cross-Appellees.      )

Before:  ROGERS, SUTTON and McKEAGUE, Circuit Judges.

PER CURIAM.  This case makes a return visit.  Last time, we vacated the district court's order reopening a settlement under Rule 60(b)(6) of the Federal Rules of Civil Procedure, reasoning that the court did not explain the basis for granting this exceptional relief.  On remand, the district court reopened the case again, but its explanation again does not justify the extraordinary relief given.  We vacate the decision and remand the case with instructions to enforce the settlement.

I.

Our prior opinion describes the underlying trademark and unfair competition dispute.  *See G.G. Marck & Assocs., Inc. v. Peng*, 309 F. App'x 928, 929–31 (6th Cir. 2009).  All we need add today is the relevant procedural history.

In October 2005, the parties reached an oral settlement agreement in which the defendants agreed to (1) an injunction requiring compliance with United States trade laws and independent monitoring and (2) a mutual release of all claims to be signed by the parties and non-party Anna Peng, the wife of defendant James Peng. Two months later, Marck filed a motion to enforce the settlement, and the district court held a hearing. At the hearing, the parties stipulated to a permanent injunction order. The district court entered the injunction on December 8, 2005 and continued the hearing until January 2006, when the parties planned to work out the mutual release. On January 23, 2006, Marck filed a motion to reopen the case, which the district court granted the next day. The district court opted to leave the stipulated injunction in place but then entered summary judgment on the underlying complaint in favor of Marck, awarding the company $1.15 million in damages and $340,786 in legal fees.

On appeal, we reversed the order reopening the case and remanded the matter to the district court to determine whether the stipulated injunction encompassed all of the settlement and, if not, to enforce the settlement and require the parties to sign the mutual release. We allowed for the possibility of vacating the settlement and reopening the case only "[i]f the release is not obtainable, and the settlement agreement is therefore unenforceable" and the district court first provided an explanation of how Marck's "evidence establishes extraordinary or exceptional circumstances sufficient to warrant Rule 60(b)(6) relief." *Marck*, 309 F. App'x at 935.

On remand, the district court held that the mutual release was necessary to the settlement. Even though Anna Peng was willing to sign the mutual release, the district court held that this effort

was too little too late. It vacated the settlement, reopened the case, and reinstated the earlier grant of summary judgment, though this time awarding $2,253,975 in damages (without taking new evidence) and assessing a $5,000 sanction against the defendants for failing to mail copies of the signed injunction to all required parties.

II.

This appeal presents a threshold question: Did the district court permissibly use Rule 60(b)(6) to reopen the parties' settlement? No—for two essential reasons: (1) Rule 60(b)(6) is an extraordinary form of relief, one rarely invoked to vacate a settlement agreement; and (2) the explanations given by the court for this exceptional relief do not justify it.

*First*, our case law sets a high bar for granting relief under Rule 60(b). Rule 60(b) allows a court to "relieve a party or its legal representative from a final . . . order" for any of the five reasons listed in the rule and, as set out in subsection (b)(6), for "any other reason that justifies relief." Public-policy interests favor preserving final judgments and indicate that Rule 60(b) should not lightly be used to reopen them. *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 468–69 (6th Cir. 2007). This is especially true of the catch-all language in Rule 60(b)(6), which authorizes reopening "only in exceptional or extraordinary circumstances [that] are not addressed by the first five numbered clauses of the rule." *Id*. A breach of a settlement agreement does not meet the exceptional-circumstances requirement of Rule 60(b)(6). *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 459 (6th Cir. 2008). On the contrary, "[s]ettlement agreements should . . . be upheld

whenever equitable and policy considerations so permit." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976). The district court may vacate a settlement agreement only "*when required in the interests of justice, not whenever a settlement agreement has been breached.*" *Ford Motor Co.*, 487 F.3d at 470 (emphasis in original).

*Second*, even accounting for the benefit of the doubt given to district courts in applying this standard, *id.*, 487 F.3d at 468, the court's explanations do not justify the evisceration of this settlement agreement. The court premised its decision mainly on the finding that Peng breached the settlement agreement in two ways: when Peng failed to send his wife, Anna, a copy of the stipulated injunction in December 2005; and when Anna Peng refused to sign a mutual release of claims in January 2006. Even if we grant the assumption that both acts amounted to material breaches of the settlement, that does not justify this relief. "In our Circuit," as shown, "the breach of a settlement agreement does not, by itself, justify relief under Rule 60(b)(6)." *Info-Hold, Inc.*, 538 F.3d at 459. Even if that were not the case, even if in some circumstances a sufficiently egregious set of breaches would permit a Rule 60(b)(6) undoing of a settlement, this would hardly be the occasion for doing so. Marck offers no theory of harm arising from the breach. It is not as if Anna Peng obtained any benefit from her initial refusal to sign. She offered to sign the agreement on remand. And she has not used her failure to sign a release to compete unfairly with Marck. The heart of the dispute is between James Peng and Marck, making Anna Peng a peripheral player at most in the resolution of this case. Nor is there any evidence that James Peng violated his substantive obligations under the settlement.

To this day, it remains unclear why Marck and the district court could not have remedied the problem more directly, all while preserving the settlement. In view of its power to enforce the settlement, the district court might have given James Peng thirty days to obtain his wife's signature, threatening sanctions or reopening if he failed to do so. Marck's motion to reopen, indeed, seemed to contemplate that course of action. As intimated by the requirement that relief in this setting be granted only in "extraordinary" and "exceptional" circumstances, Rule 60(b)(6) is a recourse of last, not first, resort.

The district court offered two other grounds for relief. Neither helps. The court pointed to an email Peng sent in November 2005 to his counsel indicating he would not agree to the terms of the injunction and mutual release proposed by Marck. The district court thought this email showed Peng's intent to repudiate the settlement from the outset. But why is a reluctance to sign the settlement *before* he in fact signed it any more relevant to the inquiry than Marck's (and the court's) apparent interest in repudiating the settlement *after* the parties signed it? At any rate, as Peng's counsel clarified, there is another explanation for Peng's actions. He disagreed with some provisions in the injunction and release because they had not been part of the original oral settlement agreement.

The court also pointed to the delay in receiving Anna Peng's signature on the mutual release. After this court remanded the case, Peng informed the district court that Anna Peng would be willing to sign a mutual release if the court required it. But despite our instruction to "require the relevant parties to sign the release" if it was necessary, the district court found that a signature at this point would not "further justice" because Peng's earlier failure to obtain the signature led to thousands of

dollars in legal fees and expenses. While some blame no doubt falls to Peng for the protracted nature of this litigation, the district court could have avoided some of that litigation by requiring the signature when it first became a disputed issue between the parties rather than preemptively reopening the case. Either way, the point is that there was a clear path to executing the settlement as the parties originally agreed, and the district court fails to offer a good explanation for not following that path. Merely having "serious doubt" about the prospects for future compliance by itself does not suffice to establish the kind of exceptional circumstances that warrant Rule 60(b)(6) relief.

## III.

Peng separately challenges the district court's imposition of a $5,000 sanction for his violation of the stipulated injunction, premising his argument on the ground that the district court vacated the injunction. First Brief at 52–53. That theory of invalidity no longer applies, as we are remanding the case with directions to reinstate the injunction. We affirm the order of sanctions.

## IV.

For these reasons, we vacate the order reopening this case and remand the matter to the district court with instructions to enforce the settlement. We also vacate the district court's grant of partial summary judgment and award of damages, and affirm the $5,000 sanction.