NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0061n.06

No. 18-3399

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 06, 2019
DEBORAH S. HUNT, Clerk

G.G. MARCK AND ASSOCIATES, INC.,

    Plaintiff-Appellant,

v.

JAMES PENG, et al.,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
NORTHERN DISTRICT OF
OHIO

BEFORE:  GIBBONS, ROGERS and STRANCH, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.**  On October 19, 2005, G.G. Marck and Associates, Inc. ("Marck") reached an oral settlement agreement with James Peng and his companies ("Peng").  For the next eight years, however, the parties argued over the terms of the agreement: the district court twice vacated the settlement and reopened the case, and the Sixth Circuit twice vacated the district court's reopening and instructed the district court to put the settlement back in place.  On January 2, 2013, the district court finally entered a written agreement to enforce the settlement.  Four years later, on October 10, 2017, Marck filed a new complaint.  It alleged that Peng breached the 2005 oral agreement as early as November 2005 and that the breach continued until the parties stopped litigating the case in 2013.  Marck therefore requested $1,073,172.97 in compensatory damages for breach of the 2005 settlement agreement—damages equal to the attorneys' fees Marck incurred in litigating the case between December 15, 2005 and December 2, 2013.

Peng moved to dismiss the case, arguing that the complaint (1) was barred by Ohio's six-year statute of limitations for oral contracts, (2) was barred by res judicata, and (3) failed to state a claim. The district court granted Peng's motion, and dismissed the case under Ohio's statute of limitations for breach of oral contracts without considering Peng's alternative arguments for dismissal. We agree that the case is time-barred and affirm the district court's dismissal of Marck's complaint.

I.

Marck is an Ohio corporation that makes and imports sublimation mugs—blank mugs onto which images can be placed. Peng, a California resident, owns three companies that compete in the sublimation mug market. In September 2005, Marck filed a complaint against Peng in the Lucas County Common Pleas Court in Toledo, Ohio. Marck alleged various unfair competition and trademark violations. Peng removed to the United States District Court for the Northern District of Ohio on the basis of diversity of citizenship and federal question jurisdiction.

On October 19, 2005, during a hearing, the parties stated that they had reached an oral settlement agreement. They read the key terms of the agreement into the record. The agreement included mutual releases of claims and a provision that Peng would be monitored for compliance with federal customs, importation, and transportation laws for three years. The next day, the district court entered an order marking the case as "[s]ettled and dismissed without prejudice." DE4, Amended Compl., Page ID 35. The district court retained jurisdiction to vacate the order and reopen the case "upon cause shown that the settlement has not been completed and further litigation is necessary." *Id.*

After a month of negotiations in which Marck alleged that the Peng companies refused to sign the settlement, attempted to add new material terms, and told Marck that they were "breaching

and otherwise had repudiated and rejected the settlement," the district court held a settlement enforcement hearing on December 7, 2005. *Id.* at 36. The next day, the district court entered a stipulated permanent injunction, signed by the parties, to effectuate the settlement.

In the weeks that followed, however, the parties were unable to reach a final, written agreement. In large part, their dispute centered around whether Anna Peng, an officer of the Peng companies, would be a party to the agreement. On January 23, 2006, the Peng companies emailed Marck. They contended that they would not follow through with the agreement unless Anna Peng was not required to sign a release. As a result of their disagreement, Marck moved to reopen the case and the district court granted its motion on January 24, 2006.

On February 5, 2009, the Sixth Circuit vacated the district court's reopening of the case. *G.G. Marck & Assocs., Inc. v. Peng (Marck I)*, 309 F. App'x 928, 935 (6th Cir. 2009). The Sixth Circuit remanded, reasoning that the district court did not sufficiently explain the basis for granting this exceptional relief under Fed. R. Civ. P. 60(b)(6). *Id.* On remand, the district court again vacated the settlement and reopened the case on October 21, 2009. The case then "[made] a return visit" to the Sixth Circuit. *G.G. Marck & Assocs., Inc. v. North Am. Invs., Corp. (Mark II)*, 465 F. App'x 515, 516 (6th Cir. 2012) (per curiam). On March 6, 2012, the Sixth Circuit again vacated the district court's decision to reopen the case and remanded with instructions to enforce the settlement. *Id.* at 518–19. Accordingly, on January 2, 2013, the district court entered a "Settlement Agreement and Mutual Release of All Claims," effective October 19, 2005, and a "Final Order for Permanent Injunction." DE 4, Amended Compl., Page ID 42. The agreement included a clause stating that it "constitutes the entire agreement between the parties hereto." DE 8-5, Settlement Agreement, Page ID 108. It also contained a section stating that any claim for attorneys' fees or expenses incurred after October 19, 2005 "is not released, acquitted or discharged." *Id.* at 107.

3

The Peng companies appealed the district court's agreement. They argued, *inter alia*, that the agreement included terms that were not part of the original 2005 oral agreement. The Sixth Circuit agreed but affirmed the agreement anyway. It explained:

> [W]hen the parties originally entered their settlement into the record in 2005, they discussed only the agreement's basic framework. . . . The district court was thus on solid ground in concluding that the record contained only "the agreement's bare essential terms," with "additional terms" remaining to be specified. The parties, however, never got around to writing down those additional terms. Nor could the parties agree about what they had agreed to, even though the district court urged them to work these differences out themselves. The parties thus saddled the district court with the unsought responsibility of figuring out just what the unrecorded terms of the parties' settlement were. We can discern no clear error in the district court's execution of this factual task—and Peng's appellate briefs offer no basis for finding one.

*G.G. Marck & Assocs. Inc. v. Peng (Marck III)*, No. 13-3015, 2013 U.S. App. LEXIS 26529, at *5–6 (6th Cir. Sept. 3, 2013). On December 2, 2013, the Peng companies provided a signed release from Anna Peng.

The case stayed quiet for four years. Then, in August 2017, Marck filed a motion for sanctions, contending that the Peng companies acted in bad faith by failing "to timely comply with the essential terms of the settlement agreement." DE 15, Order, Page ID 478. Marck requested that the Peng companies pay its attorneys' fees and costs incurred between December 15, 2005 and December 2, 2013.

On October 10, 2017, while the sanctions motion was pending, Marck filed a new complaint—from which the current appeal stems—alleging the Peng companies breached the October 19, 2005 settlement agreement. Marck requested $1,073,173 in compensatory damages— equal to the amount Marck incurred in attorneys' fees between December 15, 2005 and December 2, 2013. Marck alleged that the Peng companies:

[1] breach[ed], reject[ed], and repudiate[ed] the Settlement Framework terms of October 19, 2005 that were read into the record of the District Court in the Initial Lawsuit;

[2] refus[ed] to timely cooperate in the reduction of the Settlement Framework terms into writing;

[3] fail[ed] to timely provide signed Mutual Releases for each of the Peng Defendants;

[4] fail[ed] to timely provide a Mutual Release signed by Anna Peng;

[5] fail[ed] to timely seek Anna Peng's cooperation in the execution of a Mutual Release signed by Anna Peng; [and]

[6] continu[ed] to litigate without completing the required settlement including, but not limited to, executing a Settlement and Mutual Releases, and producing a Release executed by Anna Peng.

DE 4, Amended Compl., Page ID 43–44.

The Peng companies filed a motion to dismiss Marck's complaint. They argued that the complaint (1) was barred by Ohio's six-year statute of limitations for oral contracts, (2) was barred by res judicata, and (3) failed to state a claim.

The district court consolidated Marck's motion for sanctions and new amended complaint. It denied sanctions and dismissed the complaint. The court found that Ohio's six-year statute of limitations for oral agreements applied and that the statute was not tolled at any point. The district court therefore concluded that since the statute of limitations began running when the alleged breach occurred, at the latest, in January 2006, Marck's 2017 complaint was barred by the six-year statute of limitations. The district court did not address the Peng companies' alternative theories for dismissal. Marck timely appealed, contending that Ohio's six-year statute of limitations for oral contracts did not bar its suit.

II.

This court reviews *de novo* a district court's grant of a motion to dismiss on statute of limitation grounds. *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 839 F.3d 458, 461 (6th Cir. 2016). Although the statute of limitations is an affirmative defense and "a plaintiff

generally need not plead the lack of affirmative defenses to state a valid claim," the court can dismiss the claim if "the allegations in the complaint affirmatively show that the claim is time-barred." *Cataldo v. U.S. Steel Corp*, 676 F.3d 542, 547 (6th Cir. 2012). When the allegations show that relief is barred by the applicable statute of limitations, dismissal is proper under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. *Id.*

In assessing a motion to dismiss under Rule 12(b)(6), this court "construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim has facial plausibility when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" but is not akin to a probability requirement. *Id.* In conducting this analysis, a court "primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Neiman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

## III.

On appeal, Marck argues that the district court erred in finding that its complaint for breach of contract was time-barred. We disagree. First, the statute of limitations began running when the cause of action began accruing—at the earliest in November 2005, and at the latest, in January

2006. Second, the 2013 written agreement does not alter when the statute of limitations for breach

of the 2005 agreement began running. Third, even if the statute was tolled when the district court

reopened the case between January 24, 2006 and March 6, 2012, Marck's complaint still is

untimely. We therefore affirm the district court's dismissal of Marck's complaint.

A.

Marck's complaint alleges breach of contract, and the defendants removed to federal court

on the basis of diversity of citizenship. Thus, this court applies the substantive law of the forum

state—Ohio—and federal procedural law. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374

(6th Cir. 2009) ("Under the *Erie* doctrine, federal courts sitting in diversity apply the substantive

law of the forum state and federal procedural law.") (citing *Erie R.R. Co. v. Tompkins*, 304 U.S.

64 (1938)). In applying Ohio law, this court "must follow the decisions of the state's highest court

when that court has addressed the relevant issue." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754,

762 (6th Cir. 2008) (internal quotation marks omitted). If the highest court has not yet answered

the precise question at hand, this court "must predict how the [state] court would rule by looking

to all the available data, including intermediate appellate decisions." *Lutz v. Chesapeake

Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013) (internal citations omitted). Thus, this court

must determine whether Marck's complaint was time-barred under Ohio contract law.

Under Ohio law, when parties enter into an oral settlement agreement in court, the

agreement constitutes "a binding and enforceable contract." *Tabbaa v. Koglman*, 777 N.E.2d 338,

341 (Ohio Ct. App. 2002). Ohio's general rule is that "a breach of contract action accrues when

the breach occurs or when the complaining party suffers actual damages as a result of the breach."

*Lutz*, 717 F.3d at 473 (citing *Columbus Green Bldg. Forum v. State*, 980 N.E.2d 1, 10 (Ohio Ct.

App. 2012)).  When the "terms of a contract are clearly repudiated by a party," "a cause of action for breach of contract accrues only once—at the time of repudiation."  *Id.* at 468 n.7.

The Ohio Revised Code Chapter 2305 provides the statutes of limitations for breach of contract claims.  If the contract is oral, parties have up to six years after the cause of action accrues to file suit.  *Id.* § 2305.07.  If the contract is written, parties are afforded eight years.[1]  *Id.* § 2305.06.

Here, Marck alleges breach of "[t]he settlement agreement reached on October 19, 2005."  DE 4, Amended Compl., Page ID 43.  The October 19 agreement was oral.  *Marck II*, 465 F. App'x at 516 ("In October 2005, the parties reached an oral settlement agreement.").  That hearing transcript is the only written document discussed by the parties describing an agreement reached in October 2005, and a transcript is not a writing sufficient to convert an oral agreement into a written one.  *See, e.g.*, *Smith v. ABN AMRO Mortg. Grp., Inc.*, 434 F. App'x 454, 461–62 (6th Cir. 2011) (concluding that "the parties reached an oral settlement agreement" even though the district court read the "basic settlement terms" into the record); *Selvage v. Emnett*, 909 N.E.2d 143, 146–47 (Ohio Ct. App. 2009) (determining that "the parties reached a valid oral agreement to settle the case" based on the terms of the agreement read into the record).  Thus, the applicable statute of limitations for breach of the oral contract was six years.  Ohio Rev. Code § 2305.07.

Since the clock starts when breach or repudiation occurs, *see Lutz*, 717 F.3d at 468 n.7, 473, Marck's action began accruing as early as November 16, 2005 and as late as January 23, 2006.  In its complaint, Marck contended that on November 16, 2005, Peng's attorney "told Marck's counsel that the Peng Defendants were breaching and otherwise *had repudiated and*

---

[1] On appeal, Marck argues that the eight-year statute of limitations for written agreements should apply. Marck is correct that the current Ohio Revised Code contains an eight-year statute for claims involving breach of written contracts.  Ohio Rev. Code § 2305.06.  But because the alleged breach occurred prior to 2012, the applicable statute of limitations for a written contract would likely be fifteen years.  *See Browne v. Artex Oil Co.*, No. 17 CA 20, --- N.E.3d ---, 2018 WL 4471737, at *4 n.1 (Ohio Ct. App. May 31, 2018) ("The statute was amended from fifteen years to eight years, effective September 28, 2012.").  This discrepancy is inconsequential, however, because Marck's complaint alleges breach of an oral contract.

*rejected* the settlement and Settlement Framework terms." DE 4, Amended Compl., Page ID 36 (emphasis added). Additionally, Marck asserts that on January 23, 2006, Peng's attorney emailed Marck and "confirmed there would be no settlement on the terms reached on October 19, 2005." *Id.* at 37. Construing the complaint in the light most favorable to Marck, *see Heinrich*, 668 F.3d at 403, we will assume the claim began accruing on January 23, 2006.

Marck filed the complaint for breach and repudiation of the October 2005 agreement on October 10, 2017—eleven years and eight months after January 23, 2006. Therefore, under Ohio's six-year statute of limitations for oral contracts, Marck's complaint is time-barred. *See* Ohio Rev. Code § 2305.07.

## B.

The later 2013 written agreement—whether it memorialized or integrated the previous oral agreement—does not alter our conclusion.

## 1.

First, Marck argues that "the settlement agreement of January 2, 2013 is a written contract" and "memorialization of the settlement." CA6 R. 15, Marck Br., at 30. It therefore contends that the eight-year statute of limitations for written contracts applies and that it did not begin running until the agreement was written on January 2, 2013. We disagree.

Despite later memorialization, the six-year statute of limitations for oral contracts governs this dispute. When an oral contract's terms are later memorialized in writing, the six-year statute of limitations applies because the written memorialization "does not convert the oral contract into a contract in writing" so long as the litigant "does not seek to enforce [the later written agreement] as a distinct instrument." *First Nat'l Sec. Corp. v. Hott*, 122 N.E.2d 777, 778–79 (Ohio 1954); *see*

*also Joseph W. Diemert, Jr. & Assocs. Co. v. Rubenstein, Novak, Einbund & Pavlik*, No. 76575, 2000 WL 1038177, at *2–3 (Ohio Ct. App. July 27, 2000).

Second, *when* an agreement is memorialized does not affect when the statute of limitations begins accruing. Under Ohio law, a valid oral agreement has the same binding effect as a valid written agreement. *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001) (applying Ohio contract law). Thus, parties can breach an oral agreement in the same way they can breach a written agreement, and a cause of action for breach of contract accrues when the breach occurs. *Lutz*, 717 F.3d at 473 (citing *Columbus Green Bldg. Forum*, 980 N.E.2d at 10). Thus, the relevant starting point for a breach of contract action is when the breach occurs, not when the terms are memorialized.

Here, Marck alleged that the Peng companies breached the "terms of October 19, 2005." DE 4, Amended Comp., Page ID 45. Thus, Marck does not "seek to enforce [the 2013 agreement] as a distinct instrument." *First Nat'l Sec. Corp.*, 122 N.E.2d at 778. Rather, Marck's complaint explicitly alleges breach of the 2005 agreement, and the later memorialization does not convert the earlier agreement into a written one for statute of limitations purposes. Thus, even if the 2013 agreement is a "lawful memorialization of the settlement," the oral six-year statute still applies, and it began running when the breach first occurred.

## 2.

Similarly, Marck's argument about integration is not persuasive. Under Ohio law, when a written agreement is completely integrated, it is the "single and final memorial of the understanding of the parties," and "prior and contemporaneous negotiations, oral or written, are excluded." *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27 (2000). Thus, a fully integrated agreement "cannot be modified by evidence of earlier or contemporaneous agreements that might add to,

vary, or contradict the writing." *Bellman v. Am. Int'l Grp.*, 865 N.E.2d 853, 857 (Ohio 2007) (citation omitted).

Here, Marck argues that the 2013 agreement entirely replaced the earlier oral agreement through its integration clause, and therefore the statute of limitations for written contracts applied and began running in January 2013. Marck is correct that the 2013 agreement states that it "constitutes the entire agreement between the parties." DE 8-5, Settlement Agreement, Page ID 108. But the district court's own explanation of the written agreement indicates that it does not entirely replace the 2005 agreement. When the district court entered the 2013 agreement, it noted that it "[did] not alter the effect of the settlement entered by the parties on October 19, 2005." DE 8-4, Order, Page ID 103. And even if the 2013 agreement was fully integrated, Marck cites no Ohio caselaw construing a suit under a preexisting oral agreement as brought under a subsequent, fully integrated agreement. To the contrary, when an Ohio appellate court concluded, based on an integration clause, that a written Service and License Agreement was "the entire agreement between the parties" as to the development of a certain software platform, it promptly affirmed the grant of judgment on the pleadings on all of the plaintiff's claims "arising out of the alleged oral development contract." *Fontbank, Inc. v. CompuServe, Inc.*, 742 N.E.2d 674, 679 (Ohio Ct. App. 2000).

Moreover, Marck alleges breach as early as November 2005—far before the 2013 agreement came into existence. Marck's complaint "only refers to the 2013 agreement in passing and does not seek relief for any breach or failure to comply with that agreement." DE 15, Order, Page ID 486. Thus, whether or not the 2013 agreement was fully integrated is not dispositive because Marck does not allege breach of the 2013 agreement. It explicitly requests relief for breach of the 2005 oral agreement.

11

3.

Marck also argues that the 2013 agreement is a separate agreement that allows recovery for breach of the earlier oral agreement. In Ohio, while "a prevailing party in a civil action may not recover attorney fees as part of the costs of litigation," there is an exception for breach of settlement agreements that "specifically provide[] for the losing party to pay the prevailing party's attorney fees or when the prevailing party demonstrates bad faith on the part of the unsuccessful litigant." *Wilborn v. Bank One Corp.*, 906 N.E.2d 396, 400 (Ohio 2009). "When a party breaches a settlement agreement to end litigation and the breach causes a party to incur attorney fees in continuing litigation, those fees are recoverable as compensatory damages in a breach of settlement claim." *Tejada-Hercules v. State Auto. Ins. Co.*, No. 08AP-150, 2008 WL 4416534, at *3 (Ohio Ct. App. Sept. 30, 2008) (citation omitted).

Here, Marck argues that under the 2013 agreement, it "could seek recovery of its attorneys' fees and costs incurred from October 19, 2005, forward." CA6 R. 22, Marck Reply Br., at 2. But while Marck's underlying theory—that it could seek compensatory damages for breach in the amount incurred as attorneys' fees stemming from Peng's failure to adhere to the oral settlement agreement—may be warranted under *Wilborn*, this theory is unrelated to calculating when the statute of limitations expired. *Wilborn* provides a vehicle through which Marck could request compensatory damages equal to attorneys' fees—but Marck's suit is still a breach of contract suit subject to the applicable statute of limitations.

C.

1.

Lastly, even if the statute of limitations was tolled when the district court reopened the case, Marck's suit is still time-barred. Marck contends that "any Statute of Limitations that may

have applied did not run, or was tolled[,] between January 23, 2006, with the Order 'destroying' and 'superseding' [the] settlement, and March 6, 2012, when the appellate court found and ordered that there was a settlement to be enforced, vacating the last judgment for monetary damages." CA6 R. 15, Marck Br., at 37.

But even if we assume that the statute was tolled when the district court reopened the case, Marck's complaint is still time-barred because the case was not open for the entire time that Marck contends it was. Rather, the settlement was alive again between February 5, 2009, when the Sixth Circuit vacated the district court's reopening, and October 21, 2009, when the district court again reopened the case. Thus, if the statute of limitations was tolled when the case was reopened, the proper calculation would be between January 23, 2006 and February 5, 2009, and then again between October 21, 2009 and March 6, 2012. Accounting for 1976 days of potential tolling, Marck still filed its complaint six years, three months, and 21 days after the claim began accruing. Its complaint is therefore time-barred under Ohio's six-year statute of limitations for oral contracts.

2.

Finally, this case does not present extraordinary circumstances in which to apply the equitable tolling doctrine. Ohio state law governs the analysis. *See Weikle v. Skorepa*, 69 F. App'x 684, 687 (6th Cir. 2003) ("We have generally held that . . . tolling principles are governed by state law, except when dealing with federal claims or in unusual cases where doing so would produce an outcome substantially different from the outcome that would have been obtained in state court.") (internal citations and quotation marks omitted). Under Ohio law, "[a] litigant seeking equitable tolling must demonstrate that he or she diligently pursued his or her rights, but some extraordinary circumstance stood in his or her way and prevented timely action." *Lottridge v. Gahanna-Creekside Invs., L.L.C.*, 36 N.E.3d 744, 753 (Ohio Ct. App. 2015). Equitable tolling is

13

"to be applied sparingly and only in exceptional circumstances." *Id.* With regard to breach of contract claims, the Ohio Court of Appeals has noted that the statute of limitations is not tolled when "a party chooses to seek redress by filing a motion to enforce the terms of a settlement agreement rather than an independent action sounding in breach of contract." *Castle King L.L.C. v. Attorney Gen. of Ohio*, No. 10AP-735, 2011 WL 1137299, at *3 (Ohio Ct. App. Mar. 29, 2011).

Here, Marck does not present a compelling case for equitable tolling. Marck argues that this court should apply the equitable tolling doctrine because "[i]t would have been inequitable to require Marck to file a lawsuit flowing from the breach of a settlement that simply did not exist and could not be enforced as a matter of law between January 23, 2006 and March 6, 2012—a period of more than 6 years itself." CA6 R. 15, Marck Br., at 40. But Marck has not demonstrated that it "diligently pursued [its] rights" and that "some extraordinary circumstance" stood in its way. *Lottridge*, 36 N.E.3d at 753. Rather, Marck argues that it could not bring a breach of contract claim earlier because the district court had reopened the case between January 2006 and March 2012. Marck, however, is the party who moved to have the settlement enforced in 2005 and the case reopened in January 2006. At Marck's request, the district court reopened it. Instead of requesting that the district court reopen the case, Marck could have immediately sued for breach of contract. Marck chose not to. Where a party could bring an independent action sounding in breach of contract but chooses to take another route—as Marck did—there are not "extraordinary circumstances" that compel equitable tolling. *See Castle King L.L.C.*, 2011 WL 1137299, at *3; *Lottridge*, 36 N.E.3d at 753.

Second, the heart of Marck's argument is that it was unfair to expect it to bring its claim while the case was reopened. But even if we agree with this reasoning, there is no support for otherwise tolling the statute of limitations past when the district court reopened the case. Marck

14

alleged breach of contract almost twelve years after becoming aware of the breach.  With no tolling, Marck's statute of limitations expired on January 23, 2012.  If we credit Marck's argument and assume the statute was paused when the district court reopened the case, its clock ran out on June 14, 2017.  But Marck did not file its complaint until October 10, 2017.  Marck does not provide any support for why we should not only toll the statute during the time when the case was reopened but also for an additional three months.

IV.

For the reasons stated, we affirm the district court's grant of Peng's motion to dismiss the case under Ohio's six-year statute of limitations for breach of contract.